WILLIAM N. RITCHIE v. HOWARD T. WIDDEMER.

1. Words derogatory to the professional character of a minister are actionable without proof of special damage.

2. When slanderous words affect professional character by imputation of misconduct, strict proof that the slandered person has been admitted into his profession is not required, and it will be sufficient to prove that he has practiced it; but when the words spoken deny the right to practice that profession, it seems that the right must be established by proof.

3. When the evidence fails to disclose a privileged occasion for speaking slanderous words, the defence upon that point may be overruled or the jury charged to disregard it.

On error to the Monmouth Common Pleas.

The action was in tort, and the declaration contained three counts. It stated, by way of inducement, *inter alia*, that the plaintiff was "a clergyman of the Presbyterian Church of the United States of America, duly ordained and in good and regular standing therein," and that he was acquiring a livelihood in his profession at Asbury Park, in Monmouth county.

It then charged in the first count that the defendant, for

the purpose of causing it to be believed that plaintiff had con-ducted himself improperly and immorally and without integ-rity in his profession, and that he was not a clergyman as before stated, had spoken these words, " Mr. Widdemer has had trouble with a girl in every church he has ever had," and the meaning of the words so spoken was charged to be that the plaintiff had committed disgraceful and immoral practices and was unfit to follow and practice his said pro-fession.

In the second count it charged that defendant, for a like purpose, had spoken these words, " When he [meaning the plaintiff] first went to Passaic to preach, he got in with a girl, and when his wife found it out she threatened to leave him," and ascribed the same meaning to those words.

In the third count it charged that defendant, for a like purpose, had spoken these words, " He [meaning the plaint-iff] is not an ordained minister and has no right to perform marriages nor baptism," and that the meaning of those words was that plaintiff was wholly incapacitated to perform the duties appertaining to his said profession and without power or authority to exercise the functions of a minister of said church.

The declaration stated that, by the speaking of the words, plaintiff was injured in his good name and in his profession; that his neighbors and others had been thereby induced to believe him guilty of disgraceful and immoral practices and unfit to practice his profession, and also to be without author-ity to perform the duties incident to his profession, and in consequence had refused to make use of his services in mar-riages and baptisms.

The plea was the general issue, and a verdict passed for the plaintiff. The judgment thereon has been removed to this court by writ of error, and errors have been assigned upon exceptions taken in the course of the trial.

Argued at June Term, 1896, before BEASLEY, CHIEF JUSTICE, and Justices MAGIE, GARRISON and LIPPINCOTT.

For the plaintiff in error, *Flavel McGee.*

For the defendant in error, *Samuel A. Patterson.*

The opinion of the court was delivered by

MAGIE, J. The first assignment of error is based upon an exception taken to the refusal of the trial court to nonsuit the plaintiff below. The request to nonsuit was put upon two grounds—one, applicable to the first two counts; the other, applicable to the third count only.

The first two counts, as will be seen from the statement prefixed to this opinion, charged the defendant below with speaking certain words of plaintiff below in respect of his profession as a minister of the Presbyterian church, and attributed to those words a meaning injurious to his professional character.

The contention was that the evidence before the court was insufficient to justify the jury in finding that the words proved to be spoken bore the meaning which was attributed to them, or were injurious to the professional character of the plaintiff below.

It is unnecessary to review the evidence in detail. The words proved to have been spoken by the defendant below were substantially those set out in these counts. They were spoken at a time when there was a controversy between the Presbyterian church of Asbury Park, in which plaintiff below was then preaching, and the Presbytery of Monmouth, to which that church belonged, respecting his services. From the circumstances under which the words were spoken as detailed by the witnesses, the jury might well conclude that they were spoken of plaintiff below in his character as minister and were intended to convey a meaning derogatory to that character as charged in these counts. To say of a minister, whose employment as such was then in controversy, that wherever he had previously exercised ministerial functions, he had had trouble with the female sex, and that in one instance the trouble was such that his wife threatened to leave

him, may well and naturally be understood as attributing to him conduct improper and inconsistent with the ministerial character.    Derogatory words spoken of one in the way of his profession are actionable without proof of special damage.    *Odg. Lib. & S.* *64.    The court below were, therefore, right in submitting the evidence to the jury upon these counts.

The third count charged defendant below with saying of plaintiff below that he was not an ordained minister and had no right to perform marriages nor baptisms, and the meaning attributed to those words was that he had no power or authority to exercise the functions of a minister.    It is upon this count that the allegation of special damage, arising from persons refusing to engage his services in the performance of marriages, is based.

By our statute, marriages may be solemnized by any " stated and ordained minister of the gospel."    *Gen. Stat., p.* 2005 § 7.

The words charged were proved to have been spoken But the contention was that the plaintiff below had failed to prove that he was such a minister as he had averred he was and such as could lawfully solemnize marriages.

When the alleged slanderous words impute to one practicing a profession misconduct in his professional character, strict proof of his having been admitted into that profession is not required ; it will be sufficient for him to prove that he was practicing it.    But when the words impute the non-existence of a right to practice such profession, it seems that what is essential to establish that right must be proved. *Odg. Lib. & S.* *530 ; *Collins* v. *Carnegie,* 1 *Ad. & E.* 695 ; *Smith* v. *Taylor,* 1 *New Rep.* 196 ; *Moises* v. *Thornton,* 8 *T. R.* 303 ; 13 *Am. & Eng. Encycl. L.* 488.

But if this rule be applied, I think that plaintiff below had sufficiently made out by proof that he was such an ordained minister as his declaration averred, or, at least, that in refusing to nonsuit on the ground of failure of proof in that respect there was no error leading to a reversal.

His averment was that he was a minister of the Presbyterian church, duly ordained, and in good and regular standing therein. The proof, at the close of his case, was that he had been ordained as a priest of the Protestant Episcopal church; that he had been afterward installed in a Congregational church by a council, and afterwards received into the Presbytery of Newark belonging to the Presbyterian church.

But it is contended that the averment properly construed required proof that he was a duly ordained minister of the Presbyterian church. If that be the necessary construction of the averment and if there was a defect in the proof in this respect, that defect was afterward remedied. In reviewing refusals to nonsuit for lack of proof, we are to look into all the bills of exceptions to see if the proof was afterward made or completed. If so, the judgment will not be disturbed on that ground. *May* v. *North Hudson County Railway Co.,* 20 *Vroom* 445.

In the evidence produced by defendant below, it appeared that when an ordained minister of the Protestant Episcopal church is received into a presbytery of the Presbyterian church, he is not required to be re-ordained. His previous ordination is recognized as valid by the Presbyterian church. The proof, therefore, that he had been received into the Presbytery of Newark sustained the averment that he was an ordained minister of the Presbyterian church.

It is true that, in the course of the evidence on the part of the defendant below, there was entered on the stenographer's notes what purports to be an admission by plaintiff below that, before he had been received into the Presbytery of Newark, he had been deposed from the ministry of the Protestant Episcopal church. It does not appear what was the cause of such deposition, but, perhaps, it may be inferred from the case that he was deposed for having remarried, contrary to the canon, after having procured a divorce on the ground of desertion. There was evidence from the bishop of the Diocese of New Jersey, in respect to the *status* of a deposed priest in the Protestant Episcopal church, and from a former

moderator of the General Assembly of the Presbyterian church, in respect to the right of the Presbytery of Newark to receive the plaintiff below. There was raised thereby a question of fact. An exception was taken to the ruling of the court submitting the evidence on this count to the jury. No other ruling was asked.

It results that no error is found in refusing to nonsuit on this count or in permitting the case to go to the jury thereon. If the verdict thereon is against the weight of the evidence, we cannot correct that error.

Another objection made by counsel to the third count ought, perhaps, to be noticed. His contention is that it should have set out the names of those who, as is charged, had been induced by the slander to refuse to make use of the services of plaintiff below in performing marriages. This objection, if good, should have been taken by demurrer. But it would not then have availed. The case falls within the rule applied to a similar declaration by this court in *Trenton M. L., &c.,* v. *Perrine,* 3 *Zab.* 402.

It is next argued that the trial court erred in determining that the defence that the communications were privileged had not been made out, and in charging the jury that that point of the defence should be dismissed.

It appeared in the case that the defendant below was also a clergyman of the Presbyterian church, and that the persons to whom he spoke the words charged as slanderous were attendants upon or members of the Presbyterian church of Asbury Park, in which the plaintiff below was preaching. It also appeared that a controversy had arisen over the right of the church of Asbury Park to accept the plaintiff below as their pastor, and the Presbytery of Monmouth had requested the Presbytery of Newark, into which he had been received, to recall him and forbid his further intrusion within the boundaries of the former presbytery, and the request had been declined. In one instance the communication of defendant below was made in response to a request to explain the diffi-

culty between plaintiff below and the presbytery; in the other instances what defendant below said was volunteered.

The contention is that, under the circumstances above mentioned, the communications of defendant below were privileged, or that it should have been left to the jury to say whether or not they were privileged.

It is unnecessary to discuss at large the doctrine of privileged communications. It is well settled that the burden of establishing such a defence is cast upon him who sets it up, and it seems that when evidence substantially undisputed is produced a verdict for the defendant may be directed. *Fahr* v. *Hayes*, 21 *Vroom* 275.

The first point to be made out by proof is that the occasion was privileged—that is, that under the circumstances there was cast upon the defendant a duty to speak the words. Unless this point is made out, this defence cannot avail defendant, however honest he may have been in his belief in the truth of the words he spoke.

In my judgment, the trial court was correct in holding that there was no evidence that the occasion was privileged. The occasion of speaking was the controversy as to the right of the Presbyterian church of Asbury Park to engage the services of plaintiff below, who had been received into the Presbytery of Newark while under deposition in another church for a canonical offence, against the will of the Presbytery of Monmouth, to which the church of Asbury Park belonged. If it be conceded that this situation cast upon a minister of the Presbyterian church a duty to state facts respecting that controversy to persons interested in that church for their guidance, it obviously put no duty on him in respect to the ministerial character of plaintiff below in other respects than that drawn into question in that controversy. There was no occasion calling upon defendant below to state facts derogatory to that character or denying its possession. Nor did a request for explanation, as to the difficulty between the Presbytery and the plaintiff below, furnish any occasion to state facts or rumors in respect to his professional character, in no respect concerned in that difficulty.

In this view there was no proof of this defence to go to the jury, and it was proper to overrule it as was done.

None of the other assignments of error present any question which needs to be discussed.

No error being found, the judgment must be affirmed.